1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CICELY EVANS,                              No.  2:22-cv-435-KJN

12                   Plaintiff,                 ORDER

13          v.                                  (ECF Nos. 22, 25.)

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17          Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying her application for Disability Insurance Benefits and Supplemental Security Income.[1]  In

19   her summary judgment motion, plaintiff contends the Administrative Law Judge erred in:

20   (A)(1) resolving plaintiff's mental limitations in light of the opinions of multiple medical sources;

21   (A)(2) finding plaintiff could do a full range of medium work; and (B) resolving plaintiff's

22   subjective symptom testimony and the statement of plaintiff's in-home care provider.  Plaintiff

23   seeks a remand for benefits or for further proceedings.  The Commissioner opposed, and filed a

24   cross-motion for summary judgment, and seeks affirmance.

25          For the reasons that follow, plaintiff's motion is DENIED; the Commissioner's cross-

26   motion is GRANTED, and the Commissioner's final decision is AFFIRMED.

27   _____

28   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
     consented to proceed before a Magistrate Judge for all purposes.  (ECF Nos. 8, 13, 14.)

1    I.    **RELEVANT LAW**

2            The Social Security Act provides for benefits for qualifying individuals unable to "engage

3    in any substantial gainful activity" due to "a medically determinable physical or mental

4    impairment." 42 U.S.C. §§ 423(d)(1)(a); 1382c(a)(3). An Administrative Law Judge ("ALJ") is

5    to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

6            **Step one**: Is the claimant engaging in substantial gainful activity? If so,
                the claimant is found not disabled. If not, proceed to step two.
7            **Step two**: Does the claimant have a "severe" impairment? If so, proceed
                to step three. If not, then a finding of not disabled is appropriate.
8            **Step three**: Does the claimant's impairment or combination of
                impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
9            Subpt. P, App. 1? If so, the claimant is automatically determined disabled.
                If not, proceed to step four.
10           **Step four**: Is the claimant capable of performing past relevant work? If
                so, the claimant is not disabled. If not, proceed to step five.
11           **Step five**: Does the claimant have the residual functional capacity to
                perform any other work? If so, the claimant is not disabled. If not, the
12           claimant is disabled.

13   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4);

14   416.920(a)(4). The burden of proof rests with the claimant through step four, and with the

15   Commissioner at step five. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

16           A district court may reverse the agency's decision only if the ALJ's decision "contains

17   legal error or is not supported by substantial evidence." Id. at 1154. Substantial evidence is more

18   than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable

19   mind might accept as adequate to support a conclusion." Id. The court reviews the record as a

20   whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v.

21   Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons

22   provided by the ALJ in the decision and may not affirm on a ground upon which the ALJ did not

23   rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a]

24   review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

25           The ALJ "is responsible for determining credibility, resolving conflicts in medical

26   testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to

27   more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the

28   court may not reverse the ALJ's decision on account of harmless error. Id.

1   **II.      BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**

2          In March of 2019, plaintiff applied for Disability Insurance Benefits and Supplemental

3   Security Income.  (Administrative Transcript ("AT") 332-44.)  Plaintiff alleged an onset date of

4   April 6, 2013, claiming disability due to "Anxiety, [D]epression, PTSD, Back/neck injury caused

5   by car accident, Complication from the dog attack, Reactionary airway disease, COPD, Asthma."

6   (See AT 224-25.)  Plaintiff's applications were denied initially and upon reconsideration, and she

7   sought review with an ALJ.  (See AT 99-239.)  Plaintiff appeared alongside her attorney at a June

8   2021 remote hearing, where she testified about her conditions, and where a vocational expert

9   testified about available jobs for people with similar limitations.  (AT 45-79.)

10         On June 22, 2021, the ALJ issued his decision determining plaintiff was not disabled.

11  (AT 15-37.)  The ALJ determined plaintiff met insured status through March 31, 2019.  (AT 18.)

12  At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since

13  December 22, 2015, the amended onset date.  (Id.)  At step two, the ALJ determined plaintiff had

14  the following severe impairments: thoracolumbar degenerative disc disease with sciatica and

15  radiculopathy; cervical degenerative disc disease; chronic pain syndrome; neuropathy;

16  asthma/restrictive airways disease (smoke inhalation); mood disorder; schizophrenia; anxiety

17  disorder; insomnia; post-traumatic stress disorder ("PTSD"); and alcohol use disorder.  (Id.)

18         At step three, the ALJ determined plaintiff's impairments did not meet or medically equal

19  the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 19.)

20  Regarding plaintiff's physical limitations, the ALJ considered Listings 1.14 (neuropathy), 1.15

21  (compromised nerve roots), and 1.16 (lumbar spinal stenosis).  (Id.)  The ALJ found the record

22  lacked medical documentation to show plaintiff needed any mobility device to walk, and noted

23  records showed her gait appeared normal.  (Id.)  Regarding plaintiff's mental limitations, the ALJ

24  considered Listings 12.03 (schizophrenia), 12.04 (depression/bipolar), 12.06 (anxiety/obsessive-

25  compulsive), and 12.15 (trauma and stress).  (AT 20.)  The ALJ found plaintiff moderately

26  limited in each of the paragraph B categories, citing certain medical records, a 2019 consultative

27  exam, plaintiff's stated daily activities, and plaintiff's ability to work as a caregiver for her ex-

28  husband.  (AT 20-22.)

3

1    The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform

2    medium work as per 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that plaintiff:

3        could only occasionally climb ladders, ropes or scaffolds; could
    only occasionally climb stairs and ramps; could frequently stoop

4        and crouch; could have occasional exposure to concentrated
    airborne irritants such as fumes odors, dusts, gases and poorly

5        ventilated areas . . .;
    [was] limited to the performance of simple, routine and repetitive

6        tasks . . . in a low-stress environment . . . requiring only occasional
    decision-making[,] only occasional changes in work setting[,] and

7        . . . occasional interactions with the public and with co-workers.

8    (AT 23.)  In crafting this RFC, the ALJ stated he considered plaintiff's symptom testimony, the

9    medical evidence, medical opinions, and prior administrative medical findings ("PAMFs").  (Id.)

10    Regarding plaintiff's mental impairments, the ALJ noted plaintiff's testimony that she has

11    good days and bad, has issues with sleeping and nightmares, was uncomfortable going out of her

12    home (though she was working with her psychiatrist on this issue), has auditory and visual

13    hallucinations due to her schizophrenia (worse once per week) but recognizes it is not normal, is

14    easily distracted, sometimes has issues with her memory and concentrating, and difficulties

15    interacting with others.  Plaintiff also stated the number of bad days has grown over the last 3-4

16    years, and she relies on a caregiver five days a week.  (AT 23-25, citing AT 54-61; 67-71.)  The

17    ALJ reiterated he found plaintiff's multiple mental impairments to be "severe" (AT 25) but found

18    the more severe aspects of her testimony to be inconsistent with the record.  (AT 31.)  In so

19    finding, the ALJ took note of plaintiff's statements to medical professionals in 2019 and 2020,

20    where plaintiff admitted doing some of her own errands, shopping, and driving, managing herself

21    and her finances, interacting well with family, and performing housework with rest breaks.  (AT

22    25, citing AT 425, 428, 1169.)  The ALJ also noted plaintiff cared for her ex-husband between

23    2017-2019, which included helping him with housework and taking him to his appointments.

24    (Id., citing AT 49-51.)  The ALJ noted plaintiff's medical treatment from 2015 to April 2021

25    evidencing her mental health impairments.  (AT 25-29.)  And, relevant here, the ALJ considered

26    the opinions of Dr. Heresvoort, Dr. Richwerger, Nurse Practitioner Onwuli, and those expressed

27    in the PAMFs.  (AT 32-34.)  Dr. Heresvoort stated plaintiff could not maintain employment or

28    perform any job skills due to her schizophrenia and PTSD.  (AT  936.)  However, the ALJ found

4

1    this statement unpersuasive because it was vague, failed to express any functional limitations, was

2    unsupported by and inconsistent with the medical evidence, and touched on an issue reserved for

3    the Commissioner.  (AT 32-33.)  In 2020, NP Onwuli assigned a poor rating to all nine categories

4    on a medical source statement, and months later assigned either "marked" or "extreme" mental

5    limitations.  (AT 1346-53.)  The ALJ found these opinions unpersuasive as inconsistent with the

6    evidence, including NP Onwuli's own records (including in the same opinions, where "mild to

7    moderate" impairments were found) and other records, as well as the effectiveness of medication,

8    and plaintiff's ability to perform daily activities.  (AT 34.)  Conversely, Dr. Richwerger opined

9    plaintiff was moderately limited in completing a workday without psychiatric interference and in

10   dealing with workplace stress; but was otherwise only mildly limited in performing complex

11   tasks, maintaining consistent pace, interacting with others, and accepting supervisor instructions.

12   (AT 1166-71.)  However, the ALJ noted portions of the medical record that supported moderate

13   findings in all four Paragraph B categories, and so found Dr. Richwerger's opinion unpersuasive

14   as inconsistent with records from plaintiff's current health provider, NP Onwuli, and other

15   records.  (AT 33-34.)  Finally, the opinions in the PAMFs were also found by the ALJ to be

16   unpersuasive, despite the fact that many of the findings in the PAMFs ultimately align with the

17   RFC.  (AT 33, citing AT 124, 183.)  The ALJ found the first PAMF's interaction restriction

18   unsupported and the "work independently as needed" restriction vague; the second PAMF's "low

19   demand for social interaction" restriction was found to be inconsistent and vague.  (See Id.)

20        Regarding plaintiff's physical impairments, the ALJ noted plaintiff's testimony regarding

21   her leg issues (with treatment ending in 2019, but with pain on the right side starting in 2020),

22   worsening neuropathy in her back, need to change positions, inability to sit or stand at length, lift

23   much weight, and need to lie down due to her prescriptions.  (AT 23-24, citing AT 62-66.)  The

24   ALJ concluded the medical records failed to reflect plaintiff's testified-to level of severity.  (AT

25   25.)  In so finding, the ALJ noted plaintiff's medical history, as well as the opinions of Dr.

26   Woodside, Nurse Practitioner Baba, and the physicians cited in the PAMFs.  (AT 29-32.)

27   Relevant here, Dr. Woodside opined that due to plaintiff's back and leg issues, she could only lift

28   5 lbs. and would need to change between sitting/standing every 5-30 minutes.  (AT 1354.)  The

1  ALJ ultimately found this opinion unpersuasive as inconsistent with the medical records showing

2  normal range of motion, strength, and gait, including in 2022 where plaintiff's feet showed

3  reduced sensation and in 2019 when she was observed to "sit comfortably." (AT 32, citing AT

4  1287-88.)  The ALJ also noted plaintiff's resistance to conservative treatments.  (Id.)  NP Baba

5  stated that due to low back pain, plaintiff had impaired mobility.  (AT 1159.)  The ALJ found this

6  opinion unpersuasive as lacking support and "too vague and ambiguous to be considered

7  consistent with the evidence." (AT 32.)   Finally, the PAMFs each essentially assigned plaintiff

8  to light work, but the ALJ rejected these opinions because he found the objective evidence

9  demonstrated "mostly . . . normal strength, gait, and range of motion," and because of plaintiff's

10  resistance to conservative treatments.  (Id.)

11          Based on the RFC, the ALJ determined there were jobs in the national economy plaintiff

12  could perform, such as a laundry worker, circuit board assembler, and janitor; thus, the ALJ found

13  plaintiff was not disabled.  (AT 35-36.)  The Appeals Council rejected plaintiff's appeal.  (AT 1-

14  5.)  Plaintiff then filed this action requesting judicial review of the Commissioner's final decision;

15  the parties filed cross-motions for summary judgment.  (ECF Nos. 1, 22, 25.)

16  **III.    ISSUES PRESENTED**

17          Plaintiff contends the Administrative Law Judge erred in:  (A)(1) resolving her mental

18  limitations in light of the opinions of multiple medical sources, the testimony of plaintiff's

19  caregiver, and plaintiffs (admittedly inconsistent) testimony; (A)(2) finding plaintiff could do a

20  full range of medium work, given the medical evidence, the testimony of the caregiver, and Dr.

21  Woodside's opinion; and (B) resolving plaintiff's subjective symptom testimony and the

22  statement of plaintiff's in-home care provider.  Plaintiff requests a remand for the payment of

23  benefits or for further proceedings.  (ECF No. 22, 26.)

24          The Commissioner disagrees, arguing the ALJ appropriately:  (A)(1) resolved plaintiff's

25  mental limitations in light of the opinions and evidence; (A)(2) found plaintiff could do a full

26  range of medium work; and (B) resolved plaintiff's subjective symptom testimony and the

27  statement of plaintiff's in-home care provider.  Thus, the Commissioner contends the decision as

28  a whole is supported by substantial evidence and should result in affirmance.  (ECF No. 25.)

1   **IV.   DISCUSSION**

2       **A.  Medical Opinion Evidence**

3           **Legal Standards – Medical Opinions and Persuasiveness**

4           For applications filed on or after March 27, 2017, an ALJ need "not defer or give any

5   specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

6   administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including

7   those from [plaintiff's] medical sources." See 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).

8   Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their

9   "persuasiveness." Id. In determining how "persuasive" the opinions of medical sources and

10  PAMFs are, an ALJ must consider the following factors: "supportability, consistency, treatment

11  relationship, specialization, and "other factors." Id. at sub. (b) and (c)(1)-(5).

12          Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for

13  each factor varies. Id. at sub. (a)-(b). The ALJ must explain how the supportability and

14  consistency factors were considered, as they are "the most important factors." Id. at sub. (b)(2).

15  Supportability is "the extent to which a medical source supports the medical opinion by

16  explaining relevant objective medical evidence." Woods v. Kijakazi, 32 F.4th 785, 791-792 (9th

17  Cir. 2022). Consistency is "the extent to which a medical opinion is consistent with the evidence

18  from other medical sources and nonmedical sources in the claim." Id. at 792. The regulations

19  grant the ALJ flexibility to weigh the supportability and consistency factors based on all evidence

20  in the record. 20 C.F.R. §§ 404.1520c(c)(1)-(2) and 416.920c(c)(1)-(2). The ALJ is not required

21  to articulate findings on the remaining factors (relationship with plaintiff, specialization, and

22  "other") unless "two or more medical opinions or prior administrative medical findings about the

23  same issue" are "not exactly the same," and both are "equally well-supported [and] consistent

24  with the record." Id. at sub. (b)(2)-(3).

25          An ALJ may address multiple opinions from a single medical source in one analysis. 20

26  C.F.R. §§ 404.920c(b)(1) and 416.920c(b)(1) ("source-level articulation"). "[I]n interpreting the

27  evidence and developing the record, the ALJ does not need to discuss every piece of evidence."

28  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).

1

**Analysis**

2

   1.  <u>Opinions Regarding Plaintiff's Mental Limitations</u>

3

     In reviewing the administrative record and the parties' briefing, one thing is clear:

4

plaintiff has severe limitations in her mental capacities due to her multiple medical impairments.

5

All parties agree on this fact.  The question is the extent of this severity and, for this court,

6

whether the ALJ appropriately articulated his rationale in finding plaintiff's condition not as

7

severe as Dr. Heresvoort and NP Onwuli opined.  Despite inconsistencies in some of the findings,

8

the court finds the ALJ adequately articulated his rationale, did not inappropriately cherry pick

9

around evidence, and issued findings supported by substantial evidence and free from harmful

10

legal error.

11

     First, the court notes how the ALJ's labeling of every medical opinion as "unpersuasive"

12

is overbroad and unhelpful.  In so doing, it makes the ALJ's rationale appear as if he was

13

disregarding every medical opinion in full—even when the limitations opined by those sources

14

are similar to those the ALJ adopts in the decision.  For example, the medical source who issued

15

recommendations associated with plaintiff's initial application found plaintiff to be moderately

16

limited in her ability to understand and remember detailed instructions, maintain attention and

17

concentration, and get along with co-workers or peers.  (AT 122-23.)  The ALJ stated this

18

consultant's findings, "although accompanied by citations to the record as support, is

19

unpersuasive."  (AT 33.)  But the ALJ makes these very same findings in his step two analysis,

20

categorically finding plaintiff moderately limited in each of the paragraph B criteria.  (AT 20-21.)

21

The ALJ applies this same, broad-stroke approach to each of the medical opinions, muddling the

22

findings and allowing the parties to each make far-reaching claims about the substance of the

23

decision.  This is unhelpful to the court.  However, given that within each of the paragraphs on

24

the medical sources the ALJ specifically states which portions of each opinion he rejects, the

25

court cannot find this error harmful.  <u>Treichler v. Comm'r</u>, 775 F.3d 1090, 1099 (9th Cir. 2014)

26

(describing an ALJ error as harmless if "the ALJ's path may reasonably be discerned despite the

27

error").

28

///

1    That fact aside, plaintiff's argument focuses on the ALJ's treatment of Nurse Onwuli's

2    and Dr. Heresvoort's opinions, as those two opined that plaintiff was more-severely limited in her

3    abilities than the decision ultimately found, so the court now repeats the substance of each in

4    detail.

5    Dr. Heresvoort diagnosed plaintiff with schizophrenia and PTSD, which he labeled as

6    "chronic, severe." For limitations on activities of daily living, the doctor wrote "not able to

7    consistently maintain housing or employment." For plaintiff's residual functionality, the doctor

8    wrote "unable to perform any job skills at this time." For social/behavioral limitations, the doctor

9    wrote "severe—paranoia and hallucinations cause severe limitations." (AT 936.) The ALJ

10   rejected this opinion because it (a) "fails to articulate any clear functional limitation"; (b) "lacks

11   any accompanying support"; (c) "appears largely to simply declare inability to work, a

12   determination reserve to the Commissioner"; and (d) "vague [as] unable to be found consistent

13   with the evidence." (AT 33.)

14   NP Onwuli submitted two opinions during the mid-2020 pandemic lockdown. In the first,

15   NP Onwuli wrote that plaintiff had marked limitations (defined on the form as having a

16   "considerable impact throughout workday") in her ability to focus on simple tasks, look after

17   herself, and interact with the public. NP Onwuli also found plaintiff extremely limited (defined

18   as an "almost constant impact on work or total limitation") in her ability to withstand stress, carry

19   out simple instructions, understand/remember complex job instructions, carry out instructions

20   from supervisors, and relate/interact with co-workers. NP Onwuli wrote that plaintiff needed to

21   be redirected constantly during interviews, was easily overwhelmed, could not concentrate due to

22   extreme paranoia and delusions; the NP recommended continued treatment with anti-psychotics,

23   therapy, and counseling. (AT 1353.) Months later, NP Onwuli submitted a check sheet

24   evaluation that marked plaintiff as poor in each of the nine functional categories. (AT 1350.)

25   The ALJ noted some support in NP Onwuli's treatment records for these opinions, but overall

26   found them "inconsistent with the level of limitations endorsed." (AT 34.) The ALJ cited NP

27   Onwuli's notations at other appointments (where it was noted plaintiff exhibited mild to moderate

28   symptoms and appropriate mood and behavior); plaintiff's admission that medications had been

9

1    helpful in reducing her hallucinations; her testimony and function reports that she was able to live

2    alone, shop in stores and drive, get along with family, and stay with friends when awaiting

3    housing; and the lack of any psychiatric hospitalizations.  (Id.)  The ALJ then cited to "greater

4    detail above" in concluding the evidence was more consistent with moderate limitations and not

5    the marked-extreme-poor limitations opined by NP Onwuli.  (Id.)

6         Plaintiff contends the rationale espoused by the ALJ regarding each of these medical

7    sources ignores contrary evidence and falls short of what the regulations require.  The

8    undersigned agrees that the decision sometimes fails to make explicit connections between the

9    ALJ's findings on these opinions and the evidence the ALJ relies upon.  However, the discussion

10   at step three (AT 20-22), the summation of plaintiff's testimony (AT 24) and evidence contained

11   in plaintiff's medical records (AT 25-29), and the conclusions stated for these medical sources

12   (AT 32-35) provide sufficient articulation on consistency factor, as required by the revised

13   regulations.  Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency

14   explains its decision with less-than-ideal clarity, we must uphold it if the agency's path may

15   reasonably be discerned.").

16        To wit, in the paragraph B discussion at step three (AT 20-22), the ALJ cited treatment

17   notes from the longitudinal record that align with both his findings of moderate impairments and

18   the mental and social limitations in the RFC.  This included observations made by professionals

19   at U.C. Davis and Sacramento County Health Center in 2016 and 2017 (AT 680; 715-16; 722;

20   805); LCSW Bowers in 2018 (AT 977-78); Dr. Heresvoort throughout 2019 (AT 941; 945; 959-

21   60; 1067); Dr. Richwerger's comments after a 2019 consultative exam (1170-72); NP Baba in

22   January 2019 (AT 953; 962-63); NP Onwuli's observations in 2020 (AT 1346-49; 1651); and

23   clinical notes from many others between 2019-2021 (NP Temple June 2018 AT 982-83;

24   Practitioner Robertson Sept. 2019 AT 1209-12; Practitioner Pimentel Dec. 2019 AT 1200; FNP

25   Kristiansen Dec. 2019 AT 1298-99; Dr. Woodside May 2020 AT 1654-55; PA Salas and Dr.

26   Matharu Nov 2020 AT 1607 and 1688-89; Dr. Caspar Apr 2021 AT 1719-21).  The ALJ also

27   noted portions of plaintiff's hearing testimony and statements in a 2020 function report (C10E/7),

28   which included plaintiff's admission that for a significant amount of time during the disability

period she worked as a caregiver for her ex-husband.  Then, in the RFC section, the ALJ

extensively outlined plaintiff's treatment history for her mental health impairments.  (AT 25-29.)

The undersigned will not repeat this portion of the decision here, as much of the evidence cited at

step three is re-examined here and aligns with the ALJ's description of the evidence as "mixed."

(AT 27.)  Thus, while plaintiff is correct that the paragraphs resolving NP Onwuli's and Dr.

Heresvoort's opinions are light on citation (AT 33, 34), it is clear to the court the ALJ is

referencing this extensive review in concluding these medical sources' opinions were "unable to

be found consistent with the evidence" and were "consistent with moderate limitations in all four

mental domains."  Thus, it appears the ALJ appropriately weighed the evidence supporting and

detracting from his conclusion, and the court is obliged to uphold the decision "where the

evidence is susceptible to more than one rational interpretation."  Magallanes v. Bowen, 881 F.2d

747, 750 (9th Cir. 1989).

Plaintiff expresses concern that the ALJ has improperly crafted a version of the record that

constructs the "moderate limitations" result.  She argues the ALJ failed to consider variations in

plaintiff's presentation during office visits, including observations from Dr. Woodside during a

physical exam in 2020, LCSW Bowers in 2018, and Practitioner Robertson in 2019—as well as in

visits to Dr. Heresvoort and NP Onwuli themselves.  To be sure, ALJ's are not allowed to cherry

pick the record to ignore probative evidence in plaintiff's favor.  See Holohan v. Massanari, 246

F.3d 1195, 1205 (9th Cir. 2001) (ALJ's rejection of medical opinion was based on insubstantial

evidence because ALJ selectively relied on some treatment notes while ignoring other evidence).

But as noted above, the ALJ explicitly cited these exhibits in the analysis.  For example, plaintiff

argues the ALJ failed to note Dr. Woodside's report that plaintiff stood in the corner of the room

for most of a May 2020 visit (AT 1655) and failed to note Practitioner Robertson's report that

plaintiff exhibited among other things "intense magical thinking" at a September 2019 visit (AT

1211-12).  However, the ALJ notes these very things in the decision.  See AT 21 (noting

"abnormal" behavior, citing Ex C39F/13-14—Dr. Woodside's report at AT 1655); AT 27 (noting

in a September 2019 visit plaintiff displayed, among other things "intense magical thinking,"

citing C31F –e.g., Robertson's report at AT 1209-12).)  These are two examples among many

where the ALJ consistently references plaintiff's severe conditions in the decision.  (See, e.g., AT 21 ("[A] consultative exam reflected memory functioning in the somewhat low range."); ("Notably, as common with emotional and psychotic conditions, mood and behavior observations have fluctuated from abnormal (anxious, depressed, disruptive, odd, etc.) to normal [citing exhibits from 2016-2020]."); AT 22 (noting mental status observations "fluctuated").)  Thus, this is not an instance where the ALJ ignored favorable evidence to plaintiff, but one where the ALJ appropriately resolved the conflicts in the medical evidence in deciding plaintiff's case.  Ford, 950 F.3d at 1154 (reminding that the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities"); see also, e.g., Kenneth C. v. Comm'r, 2019 WL 4261156, at *7 (W.D. Wash. Sept. 9, 2019) (affirming for the Commissioner where the ALJ rejected multiple health professionals' opinions that plaintiff was fully disabled due to mental health impairments, finding these opinions inconsistent with the overall medical record); aff'd sub nom. Cornellier v. Saul, 834 F. App'x 321 (9th Cir. 2020) (noting the administrative record included "extensive medical opinions and treatment notes showing longitudinal variations in [the plaintiff's] condition[,]" and holding that, in light of the entire record, the ALJ appropriately "resolve[d] conflicts and ambiguities in the record [and] reached conclusions supported by substantial evidence").

Having found for the Commissioner on the main portion of plaintiff's briefing, the undersigned finds the remainder of plaintiff's arguments either fail to persuade or fail to amount to reversible error.  Plaintiff argues the ALJ improperly conflated NP Onwuli's "mild to moderate" findings relied upon by the ALJ, as they concerned plaintiff's symptoms and not her limitations.  (AT 34.)  Plaintiff contends we cannot know what NP Onwuli meant by "mild to moderate," as those terms were not defined in the medical records.  But it is precisely these kinds of ambiguities the ALJ is responsible for resolving.  Ford, 950 F.3d at 1154.  The ALJ properly exercised his discretion here.

Plaintiff contends the ALJ improperly cited to her daily activities and admission that medication helped with the hallucinations when discounting NP Onwuli's opinion.  However, the ALJ appropriately resolved plaintiff's subjective symptom testimony, and was within his

1   discretion to rely on plaintiff's multiple reports to health professionals that her symptoms

2   lessened when she took her medication.  See Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir.

3   2006) ("[Impairments that can be controlled effectively with medication are not disabling for the

4   purpose of determining eligibility for SSI benefits.").

5        Regarding Dr. Heresvoort, plaintiff argues the ALJ cannot reject his opinion solely

6   because it expresses a belief that plaintiff cannot work due to her mental impairments.  However,

7   under the regulations, statements of disability are served to the Commissioner alone, so there is

8   no error by the ALJ in making this finding.  See 20 C.F.R. § 404.1520b(c)(3)(i) (providing that

9   the agency will not provide any analysis on "statements that you are or are not disabled, blind,

10  able to work, or able to perform regular or continuing work").  To the extent Dr. Heresvoort's

11  statement can be construed as something other than a statement on the ultimate issue, the ALJ

12  sufficiently articulated proper reasons to find it unpersuasive.  Even if the undersigned were to

13  adopt plaintiff's argument concerning the supportability prong, the ALJ was within his right to

14  find it inconsistent with the evidence in the record as described above.  Ford, 950 F.3d at 1154

15  (finding an ALJ can reject a medical opinion because it is "brief, conclusory, and inadequately

16  supported by clinical findings").

17       Finally, the court is not ignorant to plaintiff's arguments regarding the ALJ's treatment of

18  Dr. Richwerger's opinion and those expressed in the PAMFs by Drs. Anthoney and Mannis.

19  Even assuming for the sake of argument the ALJ committed error in these analyses, the error(s)

20  would be of little effect.  This is because each of these medical sources essentially opined plaintiff

21  was less or equally limited as was found in the RFC.  (See AT 33-34, noting Dr. Richwerger

22  found only mild and moderate impairments and believed plaintiff less limited than the RFC

23  found; noting Dr. Anthoney found none-to-moderate impairments and assigned "simple tasks"

24  (AT 124); and noting Dr. Mannis similarly found none-to-moderate impairments (AT 183).)

25  Ford, 950 F.3d at 1154 (reminding that the court may not reverse the ALJ's decision on account

26  of harmless error.  For those few limitations that go beyond what the ALJ assigned in the RFC

27  (e.g., Dr. Anthoney's belief that plaintiff should have no public contact) the undersigned finds no

28  error for reasons similar to those expressed above regarding NP Onwuli and Dr. Heresvoort, that

13

1  sufficient articulation exists on the consistency prong.  Magallanes, 881 F.2d at 750.

2       2.  Opinions Regarding Plaintiff's Physical Limitations

3       In addition to alleging error in the ALJ's mental limitations findings, plaintiff alleges the

4  ALJ's finding that she could do a range of medium work was in error.  Plaintiff focuses on the

5  ALJ's treatment of Dr. Woodside's May 2020 opinion, contending the decision fails to articulate

6  why it was inconsistent with the 2016 findings of Dr. Paquette, plaintiff's neurosurgeon at the

7  time, and the clinical findings of FNP Baba and Dr. Howe in 2019.  (ECF No. 22 at 38-40.)  The

8  court disagrees, finding the ALJ's articulation supported by substantial evidence and free from

9  legal error.

10      The ALJ found at step two that plaintiff had, among other things, severe thoracolumbar

11  degenerative disc disease with sciatica and radiculopathy; severe cervical degenerative disc

12  disease; severe chronic pain syndrome; and severe neuropathy.  (AT 18.)  Despite these

13  conditions being severe, the ALJ found none met any listing, including Listings 1.15

14  (compromised nerve roots); 1.16 (lumbar spinal stenosis); and 11.14 (neuropathy).  (AT 19-20.)

15  The ALJ made these findings by reviewing medical records from 2019-2021, noting that "gait

16  observations have been normal without use of any assistive device," that there was a lack of

17  "observations of impaired grasp, grip, pinch or manual dexterity," and that no medical source

18  concluded the neuropathy met a listing.  (Id.)  Regarding the normalcy of her gait, the ALJ cited

19  multiple records, including those from Drs. Howe's and Woodside's clinic that plaintiff contends

20  the ALJ ignored.  (AT 20, citing C17F/17-18, 39-40, 46-47 and C25F/4.)  Then, ample discussion

21  of the record appears in the RFC section, including a thorough recounting of the records plaintiff

22  argues the ALJ ignored.  (See AT 29, citing Ex. C7F 38-39 (plaintiff's records in the 2016 period

23  during Dr. Paquette's treatment); AT 30, citing Ex. 17F/50 and 25F/4 (the 2019 period while

24  plaintiff was treated at Elicia Health).)  Plaintiff contends the ALJ ignored statements regarding

25  her "significant" spinal stenosis, reduced range of motion and strength, and the like.  But the

26  decision pays some credit to these kinds of findings, which the undersigned reads as supporting

27  the severe findings and additional limitations in the RFC.  (AT 29 (". . . despite evidence of

28  degenerative disc disease . . ."; "while visibly uncomfortable sitting during her physical therapy

evaluation . . ."); AT 30 (". . . while noting tenderness in the low back . . ."; ". . . updated imaging of the lumbar spine revealed ongoing moderate [DDD] . . ."; ". . .a July 2019 exam noted diminished lower extremity reflexes . . .").)  These and other citations indicate the ALJ was not cherry picking the record, as plaintiff contends, but was fulfilling his duty to reconcile conflicts in the record.  Ford, 950 F.3d at 1154.

Further, plaintiff contends the ALJ failed to weigh the opinions of Dr. Paquette, FNP Baba, and Dr. Howe when considering Dr. Woodside's opinion (and then Woodside's opinion in the paragraphs concerning FNP Baba and Dr. Howe).  In so arguing, plaintiff appears to interpret the regulations in a way that the text of those regulations do not require.  The new regulations require the ALJ to consider a medical opinion's persuasiveness, and articulate findings on the supportability and consistency factors.  20 C.F.R. §§ 404.1520c(a)-(b)(2) and 416.920c(a)-(b)(2). But this does not mean that the ALJ needed to say, "Dr. Woodside's opinion is inconsistent with the evidence and FNP Baba's opinion and Dr. Howe's opinion," then turn around and say "FNP Baba's opinion is inconsistent with the evidence and Dr. Woodside's opinion and Dr. Howe's opinion."  The decision articulates findings on consistency by citing the evidence relied upon and providing a rationale; this provides the court with an understanding of the agency's path.  Molina, 674 F.3d at 1121 ("Even when an agency explains its decision with less-than-ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").

**B.  Subjective Symptom Testimony; Third Party Testimony**

**Legal Standards – Subjective Symptom Testimony**

In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

15

1   This is not an easy requirement to meet: The clear and convincing standard is the

2   most demanding required in Social Security cases.

3   Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014-15).

4   The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony

5   must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not

6   arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th

7   Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). Examples of

8   "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective

9   symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of

10  medical treatment, prescription of conservative treatment, inconsistencies between a claimant's

11  testimony and conduct (including daily activities), and whether the alleged symptoms are

12  consistent with the medical evidence of record. See Tommasetti, 533 F.3d at 1040; Lingenfelter

13  v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). A lack of corroborating, objective medical

14  evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms;

15  however, it is a factor the ALJ may consider. See Rollins, 261 F.3d at 857 (citing 20 C.F.R

16  § 404.1529(c)(2)). A claimant's statements of subjective symptoms alone are insufficient

17  grounds to establish disability, because if an ALJ was required to believe every allegation of pain

18  or impairment, disability benefits would run afoul of the Social Security Act and its purpose. See

19  20 C.F.R § 404.1529(a); Treichler, 775 F.3d at 1106.

20  **Legal Standards – Third Party Testimony**

21  Under the new regulations regarding non-medical statements, the Commissioner is no

22  longer required to articulate "germane" reasons for discounting a lay witness's testimony. See

23  Molina, 674 F.3d at 1114. Instead, the Commissioner is required to "consider" all evidence but is

24  no longer required to articulate a finding on such evidence. 20 C.F.R. 404.1520c(d). Nonmedical

25  sources include "[f]amily members, caregivers, friends, neighbors, employers, and clergy." 20

26  C.F.R. § 404.1502(e)(4). To the extent the ALJ is required to "consider" these nonmedical

27  sources, the court still reviews for legal error and substantial evidence, including whether the ALJ

28  cherry-picked around the lay witness statements to construct a result. See Holohan, 246 F.3d at

16

1205 (an ALJ's "selective . . . reliance" on the record does not meet the substantial-evidence standard).

### Analysis

Plaintiff contends the ALJ did not meet the Ninth Circuit's standards for resolving her subjective symptom testimony.  Plaintiff argues she is a poor historian of her own symptoms, given her mental conditions, and her testimony should not have been rejected out of hand.  Plaintiff also contends the ALJ erred in failing to provide reasons for disregarding the statement of her in-home caregiver Ms. Green.  (AT 435-40.)  As with the arguments concerning the medical sources, the undersigned finds the ALJ's analysis sufficiently articulated and supportive of his decision to reject the more-limiting aspects of plaintiff's testimony.

As noted in the background section, the ALJ provided a thorough and accurate synopsis of plaintiff's testimony concerning her conditions, which was solicited by plaintiff's representative at the hearing.  (AT 23-25.)  The ALJ offered, as reasons for rejecting the severe portions of plaintiff's testimony, a lack of support in the medical evidence, inconsistency in plaintiff's own testimony, periods of non-compliance with her treatment regimen, that medication controlled some of her mental health impairments, and the extent of her daily activities.  (AT 23-31.)  Without repeating each of the ALJ's points here, the undersigned finds the rejection of plaintiff's severe symptom testimony supported by substantial evidence and free from legal error.  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (noting that although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir.1989) (explaining that the ALJ may take into account prior inconsistent statements);  Burch, 400 F.3d at 681 ("[T]he ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment [in rejecting symptom testimony].")  Warre, 439 F.3d at 1006 (noting that a condition that can be controlled or corrected by medication is not disabling); Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Further, as to the ALJ's omission of any specific finding on the statements from plaintiff's caregiver, the new regulations only require consideration of these statements, not articulation. 20 C.F.R. 404.1520c(d). Portions of Ms. Green's statement are discussed throughout the decision, such that the undersigned is satisfied the ALJ met his duty to consider this evidence. Holohan, 246 F.3d at 1205.

## V.      CONCLUSION AND ORDER

Beyond plaintiff's challenges, the court finds the ALJ's decision otherwise supported by substantial evidence in the record as a whole. Ford, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence"). Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment (ECF No. 22) is DENIED;

2.      The Commissioner's cross-motion (ECF No. 25) is GRANTED;

3.      The final decision of the Commissioner is AFFIRMED; and

4.      The Clerk of Court is directed to CLOSE this case.

Dated: May 18, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

evan.435